# In the United States Court of Appeals for the First Circuit

JOHN CONTI, on behalf of himself and all others similarly situated,
*Plaintiff-Appellant,*

v.

CITIZENS BANK, N.A.,
*Defendant-Appellee,*

DOES 1 through 10, inclusive,
*Defendant.*

On Appeal from the United States District Court
for the District of Rhode Island, Providence
Case No. 1:21-cv-00296-MSM (The Hon. Mary S. McElroy)

## REPLY BRIEF OF PLAINTIFF-APPELLANT

JANINE L. POLLACK
MICHAEL LISKOW
GEORGE FELDMAN
MCDONALD, PLLC
745 Fifth Avenue, Suite 500
New York, NY 10151
(917) 983-2707

LORI G. FELDMAN
GEORGE FELDMAN
MCDONALD, PLLC
102 Half Moon Bay Drive
Croton-on-Hudson, NY 10520
(917) 983-9321

*(additional counsel listed on inside cover)*
December 3, 2024

DEEPAK GUPTA
JONATHAN E. TAYLOR
GUPTA WESSLER LLP
2001 K Street, NW, Suite 850 North
Washington, DC 20006
(202) 888-1741
*jon@guptawessler.com*

DAVID J. GEORGE
BRITTANY L. BROWN
GEORGE FELDMAN
MCDONALD, PLLC
9897 Lake Worth Road, Suite 302
Lake Worth, FL 33467
(561) 232-6002

*Counsel for Plaintiff-Appellant*

PATRICK DOWLING, JR.
D'AMICO BURCHFIELD, LLP
536 Atwells Ave.
Providence, RI 02909
(401) 454-1212

# TABLE OF CONTENTS

Table of authorities ................................................................ ii

Argument .............................................................................. 1

    I.    Citizens Bank's view of preemption contravenes *Cantero*, the cases on which *Cantero* relies, and the text of Dodd-Frank .................. 1

        A.    Citizens Bank seeks to preempt "virtually all state laws that regulate banks"—regardless of their "practical" "degree" of interference—in direct violation of *Cantero* .............. 1

        B.    Citizens Bank's near-absolute view of preemption is based on a misreading of the Supreme Court's cases ................ 4

        C.    Citizens Bank's approach to preemption—which would preempt the exact same laws as the OCC—contradicts the text, structure, and history of Dodd-Frank ........................ 10

    II.    Neither of Citizens Bank's two reasons for preempting Rhode Island's law provides any basis for preemption ................................... 13

        A.    RESPA does not preempt Rhode Island's law ........................ 13

        B.    Rhode Island's law is not preempted just because other states have enacted similar (but not identical) laws ................. 14

    III.    Citizens Bank's alternative basis for affirming dismissal of the unjust-enrichment claim need not be addressed and is incorrect ....... 16

Conclusion ............................................................................ 17

# TABLE OF AUTHORITIES

**Cases**

*Anderson National Bank v. Luckett,*
321 U.S. 233 (1944) ................................................ 8, 15

*Barnett Bank of Marion County, N.A. v. Nelson,*
517 U.S. 25 (1996) .................................................... 3

*Bowler v. Hawke,*
320 F.3d 59 (1st Cir. 2003) ........................................ 12

*Cantero v. Bank of America, N.A.,*
602 U.S. 205 (2024) ............................................ *passim*

*Cuomo v. Clearing House Association,*
557 U.S. 519 (2009) ........................................ 4, 6, 7, 8

*Fidelity Federal Savings & Loan Association v. de la Cuesta,*
458 U.S. 141 (1982) .................................................. 4

*First National Bank of San Jose v. California,*
262 U.S. 366 (1923) .................................................. 6

*Flagg v. Yonkers Savings & Loan Association, F.A.,*
396 F.3d 178 (2d Cir. 2005) ........................................ 13

*Franklin National Bank of Franklin Square v. New York,*
347 U.S. 373 (1954) ................................................ 8, 9

*Geier v. American Honda Motor Co.,*
529 U.S. 861 (2000) .................................................. 4

*Kansas v. Garcia,*
589 U.S. 191 (2020) .................................................. 9

*Lass v. Bank of America, N.A.,*
695 F.3d 129 (1st Cir. 2012) ....................................... 16

*POM Wonderful LLC v. Coca-Cola Co.,*
573 U.S. 102 (2014) .................................................. 4

*RBS Citizens, N.A. v. Avaya, Inc.*,
    2014 WL 2158933 (D.R.I. May 23, 2014) ............................................................ 16

*Ross v. Blake*,
    578 U.S. 632 (2016) ..................................................................................... 11

*SPGGC, LLC v. Ayotte*,
    488 F.3d 525 (1st Cir. 2007) .....................................................................8, 9

*Watters v. Wachovia Bank, N.A.*,
    550 U.S. 1 (2007) ......................................................................................... 6

*Williamson v. Mazda Motor of America, Inc.*,
    562 U.S. 323 (2011) ......................................................................................5

**Statutes and regulatory materials**

12 C.F.R. Pt. 1024, supp. I .................................................................... 14

12 U.S.C. § 24 Seventh ........................................................................... 14

12 U.S.C. § 25b ..............................................................................*passim*

12 U.S.C. § 2616 ................................................................................... 13

12 U.S.C. § 371 .................................................................................5, 14

12 U.S.C. § 5553 .................................................................................... 11

15 U.S.C. § 1639d .................................................................................. 14

Rhode Island General Laws § 19-9-2 ...................................................15

**Other authorities**

Citizens Savings Accounts: Start saving for the life you deserve,
    Citizens Financial Group, Inc. ...................................................................15

# ARGUMENT

## I. Citizens Bank's view of preemption contravenes *Cantero*, the cases on which *Cantero* relies, and the text of Dodd-Frank.

The district court below held that Rhode Island's interest-on-escrow law is preempted as applied to national banks. It did so, as Citizens Bank does not deny, by applying a categorical test for preemption that is indistinguishable from the "control" test unanimously rejected by the Supreme Court in *Cantero v. Bank of America, N.A.*, 602 U.S. 205, 220–21 (2024). This Court could therefore dispose of this appeal by vacating and remanding, as the Supreme Court did in *Cantero*. *Id.* at 209.

Yet Citizens Bank invites this Court to defy *Cantero* instead. It asks the Court to adopt the control test by another name and affirm the judgment below. But while this Court need not follow *Cantero*'s disposition, it must at least follow *Cantero*'s holding. Because Citizen Bank's proposed test is foreclosed by *Cantero*, the cases on which *Cantero* relied, and the plain text of Dodd-Frank, this Court should reject it.

### A. Citizens Bank seeks to preempt "virtually all state laws that regulate banks"—regardless of their "practical" "degree" of interference—in direct violation of *Cantero*.

Citizens Bank urges this Court to adopt the same preemption regime that the Supreme Court disapproved of in *Cantero*. In *Cantero*, Bank of America argued that state laws that impose any degree of "control" over a national banking power or "banking product" are categorically preempted as to national banks without regard to their "practical impact." *Cantero* Tr. 121–22. Under this approach, Bank of America

1

told the Supreme Court, the only state laws that would be saved from preemption are "[g]enerally applicable state contract laws," "generally applicable laws governing ownership of property," and "state fair-lending laws." *Cantero* Resp't Br. 42–43.

In this case, Citizens Bank simply reformulates Bank of America's control test using different wording. It argues (at 18–19) that state laws that limit national banks' "flexibility" or that allow for "diverse regulation" among the states are categorically preempted, as are state laws that regulate the "terms" of a banking product. Under this approach, says Citizens Bank (at 39), the only state laws that are saved from preemption are "state contract, property, and debt collection laws of general application." (Citizens Bank does not say *why* these laws are saved, or whether fair-lending laws are likewise saved, as Bank of America conceded in *Cantero*, and as the OCC has conceded.) Accordingly, as Bank of America's counsel told the Supreme Court at oral argument in *Cantero*, "the amount of non-preempted laws is the exact same" (and might even be *greater*) under the control test as it is under the repackaged version that Citizens Bank now offers. *Cantero* Tr. 115 (discussing one formulation of the test that Citizens Bank now advances in this Court). It is also the exact same as the approach taken by the OCC before it was rebuked by Congress in Dodd-Frank.

The Supreme Court, however, unanimously rejected Bank of America's test because it "would preempt virtually all state laws that regulate national banks, at least other than generally applicable state laws such as contract or property laws"—

in conflict with the plain text of Dodd-Frank and prior Supreme Court precedent. *Cantero*, 602 U.S. at 220–21. Instead, a court "must make a practical assessment of the nature and degree of the interference caused by a state law" to determine whether the interference rises to the level of "significant[]." *Id.* 219–20.

Citizens Bank pays lip service to this command by acknowledging, if only in the most oblique and passing way, that this Court must examine the "degree" of any interference caused by Rhode Island's law. Citizens Bank Br. ("CB Br.") 22, 36. But it never again mentions this word or discusses this part of the Supreme Court's mandate. As for the requirement of a "practical assessment" of the law's impact on banking powers, Citizens Bank does not even bother with lip service. It omits any mention of this central requirement in its brief. But the Supreme Court vacated the Second Circuit's decision in *Cantero* because it failed to undertake a practical assessment of the nature and degree of interference caused by New York's interest-on-escrow law. As *Barnett Bank* and Dodd-Frank make clear, a state law is not preempted just because it interferes with banking powers in some way. *See Barnett Bank of Marion Cnty., N.A. v. Nelson*, 517 U.S. 25, 33 (1996). To be preempted, the interference must be *significant*. Citizens Bank entirely ignores this key statutory term.

In short, Citizens Bank's position cannot be reconciled with *Cantero*. It is entirely coextensive with the view of preemption that the Supreme Court rejected as overly board, and it treats "significant" as if it were *in*significant. It should be rejected.

**B.    Citizens Bank's near-absolute view of preemption is based on a misreading of the Supreme Court's cases.**

Citizens Bank not only misapplies the Supreme Court's decision in *Cantero*; it also misapplies the cases on which *Cantero* relies. It does so in three ways.

*First*, Citizens Banks asserts (at 22–27) that state laws that limit the "flexibility" that national banks otherwise have are categorically preempted under *Fidelity Federal Savings & Loan Association v. de la Cuesta*, 458 U.S. 141 (1982). That is incorrect. *All* banking regulations limit national banks' flexibility, at least to some extent, because that is what regulations do. Yet *Cantero* makes clear that "not all … state laws that regulate national banks are preempted." 602 U.S. at 221 (cleaned up); *accord Cuomo v. Clearing House Ass'n*, 557 U.S. 519, 534 (2009) ("States … have enforced their banking-related laws against national banks for at least 85 years."). In arguing otherwise, Citizens Banks seeks to resurrect the very "control" test that *Cantero* repudiates.

In any event, Citizens Bank badly overreads *Fidelity*. The state law in that case was preempted because the entity there (a federal thrift) had been *expressly* granted "flexibility"—the *specific* power to enforce a contractual clause "at its option"—and a state law entirely eradicated that specific, express power. 458 U.S. at 146–47, 155–56. *Fidelity* thus has nothing to say about a case like this one, where flexibility has *not* been expressly granted to national banks. *Cf. POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 120 (2014) (distinguishing a prior Supreme Court case finding preemption, *Geier v. American Honda Motor Co.*, 529 U.S. 861 (2000), because in *Geier*

4

automobile manufacturers had been "deliberately allow[ed]" by federal law "to choose between different options," and state law removed "one of those choices").[1]

Citizens Bank says that the federal statute granting national banks the power to engage in real-estate lending provides such flexibility. But it does no such thing. It empowers national banks to make real-estate loans subject to the OCC's "restrictions and requirements," 12 U.S.C. § 371(a), but it does not say that *only* the OCC may regulate any aspect of real-estate lending. *Contra* CB Br. 23–24, 41 (claiming just that). That is not how the Supreme Court understood the statute in *Cantero*. Nor has any court (or to our knowledge, any other party) read the statute in this way. Reading the word "only" into the statute, moreover, would mean that the National Bank Act would preempt the field of real-estate lending as to national banks—even though Dodd-Frank subsequently made clear that the NBA "does not occupy the field in *any* area of State law." 12 U.S.C. § 25b(b)(4) (emphasis added). And it would mean that states could not enforce their own fair-lending laws—which even Bank of America and the OCC have conceded are not preempted—in contravention of the Supreme

---

[1] As Conti explained in his opening brief (at 33–34), the OCC's preemption rule does not validly grant flexibility to national banks—and Citizens Bank does not argue that it does. The OCC has no authority to issue rules purporting to preempt state law outside the narrow confines of Dodd-Frank. And as the United States told the Supreme Court, the OCC's "broad[] view" of preemption contradicts "the text, structure, and history of the statute." U.S. *Cantero* Br. 9 n.2. That distinguishes this case from cases like *Fidelity* and *Geier*. *Cf. Williamson v. Mazda Motor of Am., Inc.*, 562 U.S. 323, 335–36 (2011) (distinguishing *Geier* in part because, unlike in *Geier*, "the Solicitor General tells us that DOT's regulation does not pre-empt this tort suit").

Court's holding in *Cuomo*, 557 U.S. at 532–35; *see also id.* at 550 (Thomas, J., dissenting) (recognizing that state "fair lending laws are not substantively pre-empted").

*Second*, Citizens Bank contends (at 19) that state laws that could impose "diverse regulation" on national banks across different states are also categorially preempted, this time under *First National Bank of San Jose v. California*, 262 U.S. 366 (1923), and *Watters v. Wachovia Bank, N.A.*, 550 U.S. 1 (2007). Like Citizens Bank's first proposed categorical rule, this proposal proves far too much. Citizens Bank admits (at 40) that national banks must comply with "generally applicable state contract [and] property laws"—even though they too vary from state to state. Foreclosure laws and property taxes, for instance, often differ across state lines. Yet Citizens Bank does not take the position that it is free to ignore these laws. As Justice Gorsuch explained to Bank of America's counsel at argument in *Cantero*: "I totally get th[e] impulse that national banks don't want to have to deal with patchwork state laws, but … the baseline that Congress set is it's not preempted unless … you can prove significant impact. So … we can't take that argument very seriously … . They have to deal with [the] reality that we live in a federal system with 50 states." Tr. 100-01.

They do indeed. If all that it took to preempt state law was the possibility that other states could pass laws of their own on the subject, then *every* state law would be preempted as to national banks. *Cantero* leaves no doubt that that is not the rule.

The Supreme Court's decision in *Cuomo* reinforces this point. The respondents there made a similar argument for preemption. They claimed that, if states were permitted to enforce their fair-lending laws against national banks, "a national bank could be subject to five, ten, or even more different legal analyses of when a particular loan decision passes from permissible credit evaluation to unlawful discrimination." *Cuomo* Resp't Br. 28-29. The Supreme Court was unmoved, holding that states may generally enforce these laws against national banks. *Cuomo*, 557 U.S. at 524–36.

The Supreme Court in *Cuomo* also rejected the very argument that Citizens Bank persists with here: that there is a distinction between "state contract, property, and debt collection laws of general application" (which aren't preempted) and other state laws (which *are* preempted, according to Citizens Bank). CB Br. 39. That distinction "can be found nowhere within the text of the statute." *Cuomo*, 557 U.S. at 533. After all, "the National Bank Act *does* specifically authorize and permit activities that fall within" what Citizens Bank refers to as laws of "general application," including the express "power to make contracts" and the "incidental powers." *Id.* at 532–33. To allow broad state regulation of those activities but virtually no state regulation of other activities, the Court explained, "attempts to do what Congress declined to do: exempt national banks from all state banking laws." *Id.* at 533; *accord Cantero*, 602 U.S. at 220–21 (rejecting Bank of America's identical distinction).

Citizens Bank's reliance on *First National Bank of San Jose* and *Watters* is, in any event, misplaced. As the Supreme Court explained in *Anderson National Bank v. Luckett*, the outcome in *First National Bank of San Jose* "turned … on the effect of the state statute in altering the contracts of deposit in a manner considered so unusual and so harsh … as to deter [depositors] from placing or keeping their funds in national banks." 321 U.S. 233, 250 (1944). To read the case to stand for a broader proposition, as Citizens Bank does, is to contradict *Anderson*. And of course, if the mere possibility for variation among the states were enough to achieve preemption, the state law in *Anderson* would have been preempted—not enforced. As for *Watters*, it is irrelevant. It was not cited in *Cantero*, post-dates *Barnett* Bank, and, as *Cuomo* explains, answered only the question "whether operating subsidiaries of national banks enjoyed the same immunity from state visitation." 557 U.S. at 528; *see id.* ("The opinion addresses and answers no other question."); *Cuomo* Tr. 38 (author of *Watters* making same point). Congress then abrogated *Watters* and codified *Cuomo* by name. 12 U.S.C. § 25b(e), (i)(1).

*Finally*, Citizens Bank claims (at 25–30) that state laws that regulate "the terms of a product offered by national banks" are categorically preempted under *Fidelity*, *First National Bank of San Jose*, and *Franklin National Bank of Franklin Square v. New York*, 347 U.S. 373 (1954), as well as under this Court's decision in *SPGGC, LLC v. Ayotte*, 488 F.3d 525 (1st Cir. 2007). But as explained, *Fidelity* and *First National Bank of San Jose* do not stand for that sweeping proposition. *See also* Op. Br. 33–35. Nor does *Franklin*.

As the Supreme Court explained in *Franklin* and reaffirmed in *Cantero*, preemption in that case turned on a "narrow question" concerning specific statutory text. *Franklin*, 347 U.S. at 374; *see Cantero*, 602 U.S. at 220 n.3. The state law was preempted because "Congress ha[d] given a particular label" to a banking product in the text of a statute, and the state law completely barred national banks from describing the product using the word that Congress "specifically selected" (and the word that was most closely associated with the product). *Franklin*, 347 U.S. at 378. There is no basis for reading *Franklin* to go beyond that, and to treat the statutory text as if it were irrelevant. *Contra* CB Br. 30. Just the opposite: *Cantero* itself says otherwise. *See* 602 U.S. at 216, 220 n.3; *see also, e.g.*, *Kansas v. Garcia*, 589 U.S. 191, 208 (2020) ("All preemption arguments must be grounded in the text and structure of the statute at issue." (cleaned up)).[2]

As for *SPGGC*, Citizens Bank's continued reliance on that case gives the game away. This Court in *SPGGC* held that a state law is preempted if it places any "limits" on a banking power. 488 F.3d at 531. But as the district court below recognized, *that's the control test*. *See* Add. 8 (relying on both *SPGGC* and the Second Circuit's decision in *Cantero* and treating their tests as the same). Applying *SPGGC*'s "limits" test, as the

_____

[2] All of Citizens Bank's arguments about "product terms," moreover, would apply with equal force to state fair-lending laws, which aren't preempted. To comply with these laws, banks might have to change product terms in various ways—from debt-to-income ratio requirements and minimum down payments to credit-score thresholds and fees—if they're shown to have a disparate impact on protected groups without a legitimate business justification. *See also Cantero* Tr. 104 (Justice Gorsuch pointing out that these laws "[a]bsolutely" can require changing product terms).

district court did, means finding preemption without undertaking any "practical assessment of the nature and degree of the interference caused by a state law." *Contra Cantero*, 602 U.S.at 219–20. And sure enough, not even Citizens Bank defends the district court's analysis on appeal. Yet it urges this Court to affirm its judgment by making the same mistake. *See* CB Br. 28–29 (arguing that, under *SPGGC*, any state law that "regulate[s] the terms and conditions" of banking transactions is preempted without regard to the practical degree of interference caused by the law).[3]

## C. Citizens Bank's approach to preemption—which would preempt the exact same laws as the OCC—contradicts the text, structure, and history of Dodd-Frank.

There is another basic problem with Citizens Bank's position: It is utterly inconsistent with Congress's own understanding of what it means for a state law to "prevent[] or significantly interfere[] with" a banking power, as reflected in the text and structure of Dodd-Frank. 12 U.S.C. § 25b(b)(1)(B). That is true for three reasons:

*First*, Citizens Banks maintains (at 39) that generally applicable state laws are the only state laws saved from preemption under its view. But as Conti explained in his opening brief (at 40), section 25b applies only to "State consumer financial laws." To come within the definition of that term, the state law must "directly *and specifically* regulate[]" consumer-financial transactions "as may be authorized for national

---

[3] *SPGGC* was separately abrogated by 12 U.S.C. § 25b(h)(2)—one of Dodd-Frank's provisions overturning *Watters*—because this Court in *SPGGC* applied NBA preemption to the agent of a national bank that was not itself a national bank.

banks to engage in," or "any account related thereto." *Id.* § 25b(a)(2) (emphasis added). By its terms, this definition excludes generally applicable "contract, property, and debt collection laws" from section 25b's ambit. *Contra* CB Br. 39. It also requires "State consumer financial laws" to "regulate[] the manner, content, or terms and conditions" of national-banking activity or a consumer-financial "account." 12 U.S.C. § 25b(a)(2). Even so, the statute is framed in a decidedly *anti*-preemption way. *See* Op. Br. 40. Citizens Bank's general/specific dichotomy, and its "product terms" argument, are therefore irreconcilable with section 25b's own defined subject matter.

*Second*, Citizens Bank fully embraces the OCC's list of preempted laws. But it has no account of why Congress would have written the statute it did if it were happy with the OCC's preemption rule. Huge swaths of section 25b can be understood only as a repudiation of the OCC's 2004 rule—not a ratification of it. *See also* 12 U.S.C. § 5553 (providing that OCC preemption rules apply only to pre-July-2010 contracts). Yet Citizens Bank takes the position that the statute kept that rule fully intact. Put differently: It argues that the statute and its subparts were designed to have virtually no effect. But "when Congress amends legislation, courts must presume it intends the change to have real and substantial effect"—not "act[] as though the amendment … had not taken place." *Ross v. Blake*, 578 U.S. 632, 641–42 (2016) (cleaned up).

*Third*, Citizens Bank contends (at 36) that preemption in this context is a purely legal question that will never turn on any facts. But if that were true, many of section

25b's provisions would be completely irrational. How to explain, for example, the substantial-evidence provision? 12 U.S.C. § 25b(c). Or the requirement of periodic agency review? 12 U.S.C. § 25b(d). Or deference to OCC preemption determinations based on the "validity of the[ir] reasoning"? *Id.* § 25b(b)(5)(A). None of these provisions would make any sense if Citizens Bank were right. Citizens Bank provides no reason to attribute such wide-scale irrationality to the statute.[4]

Nor does Citizens Bank address this Court's decision in *Bowler v. Hawke*, 320 F.3d 59, 64 (1st Cir. 2003), which likewise recognizes that in many cases the question of significant interference is "unlikely to be purely legal." Courts will sometimes "have to make judgment calls about the extent to which [state] laws hinder the ability of [national banks] to engage in [certain authorized] activities, as a factual matter," which "will often be better made on an evidentiary record." *Id.* Several years later, in section 25b, Congress confirmed this Court's understanding as correct.

---

[4] Although the Supreme Court in *Cantero* did not address section 25 at length, it had no need to because its understanding of *Barnett Bank*'s proper scope is, unlike Citizen Bank's, fully consistent with the statute. As noted, the Supreme Court in *Cantero* rejected Bank of America's view because it would preempt "virtually all" state banking regulations. 602 U.S. at 220–21. And while the Court observed that its prior cases were able to decide preemption "based on the text and structure of the laws, comparison to other precedents, and common sense," nothing in its opinion *precludes* a court from requiring factual development when necessary to make a "practical assessment" of the "nature and degree" of interference caused by a state law. *Id.* at 219–20 & n.3; *contra* CB Br. 36 (falsely claiming that *Cantero* "instructs courts" to always decide preemption without a factual record, and misstating Conti's position as being that "courts must consider evidence before making a preemption determination").

## II. Neither of Citizens Bank's two reasons for preempting Rhode Island's law provides any basis for preemption.

Turning to the particular state law at issue in this case, Citizens Bank makes two arguments for why it should be preempted. Neither is persuasive.

### A. RESPA does not preempt Rhode Island's law.

Citizens Bank's first bid for preemption is less about the National Bank Act and more about the Real Estate Settlement Procedures Act (or RESPA). Citizens Bank argues that RESPA "extensively regulates national banks' operation of escrow accounts" and "does not require national banks to pay interest on mortgage escrow accounts," so Rhode Island's law must be preempted under ordinary obstacle-preemption principles. CB Br. 24–25.

This is a strikingly audacious argument. RESPA applies to "a broad group of financial institutions." *Flagg v. Yonkers Sav. & Loan Ass'n, F.A.*, 396 F.3d 178, 185 (2d Cir. 2005). It is not specific to national banks. So, to the extent that Citizens Bank is relying on a conflict with RESPA, it appears to be making an argument that would require finding Rhode Island's law to be preempted as to *everyone*, even state banks and non-banks. Citizens Bank cites no support for that argument, and there is none.

RESPA sets a regulatory floor—not a ceiling. It says so expressly: The statute does not preempt state law "except to the extent that [it is] inconsistent with any provision of this chapter, and then only to the extent of the inconsistency." 12 U.S.C. § 2616. And a state law is not "inconsistent with" RESPA just because it gives greater

protection to consumers. *See* 12 C.F.R. Pt. 1024, supp. I, ¶ 5(c)(1) ("State laws that give greater protection to consumers are not inconsistent with and are not preempted by RESPA."). Congress thus wanted compliance with *both* RESPA and state law.

Nor is Citizens Bank correct (at 25) that Congress "made a deliberate choice" not to require the payment of interest on mortgage-escrow accounts even as a matter of federal law. In Dodd-Frank, Congress made compliance with state escrow-on-interest laws a *federal* requirement for certain accounts. *See* 15 U.S.C. § 1639d(g)(3). That Congress declined to do the same for other accounts does not mean that Congress, when it added this provision in the aftermath of the 2008 financial crisis, simultaneously *preempted* those same consumer-protection laws for other accounts.

Citizens Bank cites no statute suggesting that Congress intended to treat national banks differently as to mortgage-escrow accounts. The only two banking statutes that it cites (at 12–13) are the same two statutes discussed in Conti's opening brief (at 29–30). *See* 12 U.S.C. § 371 (real-estate lending); *id.* § 24 Seventh (incidental powers). Neither remotely resembles the statutes in *Barnett Bank* and *Franklin* or gives any reason to think that Congress intended to preempt Rhode Island's law or that the law significantly interferes with powers "necessary" to banking. *Id.* § 24 Seventh.

## B. Rhode Island's law is not preempted just because other states have enacted similar (but not identical) laws.

Citizens Bank's other bid for preemption focuses on federalism. It claims that because other states have enacted interest-on-escrow laws, and because these laws

set different minimum interest rates, they all must be preempted. *See* CB Br. 19, 33–35. We have already explained the most fundamental problem with this argument. But the argument is particularly unpersuasive here given Congress's decision to require federal compliance with these very laws for certain mortgages. Given that congressional endorsement, there is no reason to think that compliance with these laws is especially difficult or burdensome, or that they are "so unusual and so harsh" as to constitute significant interference. *See Anderson*, 321 U.S. at 250. And Rhode Island's law requires only the prevailing market rate or the rate of the mortgagee's regular savings account. R.I. Gen. Laws § 19-9-2(a); *see also* Citizens Savings Accounts, https://perma.cc/K3Z6-SKLM (rates 0.01% to 0.05% for savings accounts).[5]

In the end, this law is not meaningfully different than other state laws that the Supreme Court has held to be applicable to national banks. Compliance here is, if anything, easier because the law simply requires paying a minimum interest rate. And both the federal and state governments agree that similar laws have had no "material impairment" on banks. *Cantero* Tr. 57; *see generally* Br. of New York, et al., in *Cantero*, No. 21-400 (2d Cir.). In a preemption case, when both the federal and state governments agree that the law isn't preempted, that's a good indication that it's not.

---

[5] Citizens Bank claims (at 36) that Conti is arguing for a preemption regime in which state laws are preempted as applied to national banks "only when those laws prohibit national banks from exercising their powers." He is not. His opening brief was quite clear on this point, and he stands by it. *See, e.g.*, Op. 35.

**III. Citizens Bank's alternative basis for affirming dismissal of the unjust-enrichment claim need not be addressed and is incorrect.**

Finally, Citizens Bank argues that, even if it has failed to establish that Rhode Island's law significantly interferes with its national-banking powers, this Court should nevertheless affirm the district court's dismissal of Conti's unjust-enrichment claim. But the district court did not reach this question, so this Court need not either. It could simply allow the district court to take up this argument on remand.

Should it choose to address the argument in the first instance, however, the Court should reject it. "Although the Bank is correct that damages for breach of contract and unjust enrichment are mutually exclusive," as this Court has pointed out in a previous case involving a national bank, "it is accepted practice to pursue both theories at the pleading stage." *Lass v. Bank of Am., N.A.*, 695 F.3d 129, 140 (1st Cir. 2012). Even Citizens Bank has availed itself of this accepted practice when it has filed suit in the District of Rhode Island. *See, e.g.*, *RBS Citizens, N.A. v. Avaya, Inc.*, 2014 WL 2158933, *4 (D.R.I. May 23, 2014) ("[S]ince Citizens has pled its unjust enrichment claim in the alternative, the presence of a breach of contract claim and an unjust enrichment claim at this juncture is not cause for dismissal of the unjust enrichment claim."). Under this accepted practice, both the breach-of-contract claims and the unjust-enrichment claims may go forward, and "the district court will be in a better position once the record is more developed to determine whether the unjust enrichment claim should survive." *Lass*, 695 F.3d at 140–141.

**CONCLUSION**

The district court's judgment should be reversed or, in the alternative, vacated and remanded so that the district court can apply the correct test for preemption in the first instance, consistent with the Supreme Court's decision in *Cantero*.

Respectfully submitted,

*/s/ Jonathan E. Taylor*
DEEPAK GUPTA
JONATHAN E. TAYLOR
GUPTA WESSLER LLP
2001 K Street, NW
Suite 850 North
Washington, DC 20006
(202) 888-1741
*jon@guptawessler.com*

DAVID J. GEORGE
BRITTANY L. BROWN
GEORGE FELDMAN
MCDONALD, PLLC
9897 Lake Worth Road
Suite 302
Lake Worth, FL 33467
(561) 232-6002

JANINE L. POLLACK
MICHAEL LISKOW
GEORGE FELDMAN
MCDONALD, PLLC
745 Fifth Avenue, Suite 500
New York, NY 10151
(917) 983-2707

LORI G. FELDMAN
GEORGE FELDMAN
MCDONALD, PLLC
102 Half Moon Bay Drive
Croton-on-Hudson, NY 10520
(917) 983-9321

PATRICK DOWLING, JR.
D'AMICO BURCHFIELD, LLP
536 Atwells Ave.
Providence, RI 02909
(401) 454-1212

December 3, 2024                    *Counsel for Plaintiff-Appellant*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains 4,516 words excluding the parts of the brief exempted by Rule 32(f). This brief complies with the typeface requirements of Rule 32(a)(5) and the type-style requirements of Rule 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft Word in 14-point Baskerville font.

December 3, 2024

*/s/ Jonathan E. Taylor*
Jonathan E. Taylor

## CERTIFICATE OF SERVICE

I hereby certify that on December 3, 2024, I electronically filed the foregoing brief with the Clerk of the Court for the U.S. Court of Appeals for the First Circuit by using the CM/ECF system. All participants are registered CM/ECF users and will be served by the CM/ECF system.

*/s/ Jonathan E. Taylor*
Jonathan E. Taylor
